```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Champion Chrysler Plymouth,    :
et al.,

        Plaintiffs,    :    Case No. 2:17-cv-130

  v.    :    JUDGE GEORGE C. SMITH
                               Magistrate Judge Kemp

Dimension Service Corporation, :

        Defendant.    :

REPORT AND RECOMMENDATION

    This case was filed in the Franklin County Court of Common Pleas and removed here by Defendant Dimension Service Corporation based on diversity of citizenship jurisdiction. The notice of removal states, among other things, that Dimension Service Corporation "is an Ohio corporation with its principal place of business in Ohio. Under 28 U.S.C. §1332(c)(1), Defendant is a citizen of the State of Ohio."

    On February 15, 2017, the Court issued an order (Doc. 3) directing Dimension to show cause why the case should not be remanded because, ordinarily, an in-state defendant may not remove a diversity case. That same day, Plaintiff filed a motion for an order to show cause (Doc. 4) and asked that the response time set in the Court's order (seven days) be shortened. The Court held a telephone conference with counsel to discuss that matter, and agreed with Dimension that the response time should not be shortened. Dimension filed its response to the show cause order on February 22, 2017 (Doc. 5). For the following reasons, it will be recommended that this matter be remanded to the Franklin County, Ohio, Court of Common Pleas.

                               I.   The Issue

This case requires the Court to interpret the language of 28 U.S.C. §1441(b)(2), which reads in full as follows:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

According to Dimension, this language is plain. It says that an in-state defendant may remove a case where jurisdiction is not conferred by the presence of a federal question if that defendant is not "properly joined and served." Because, when it filed its notice of removal, Dimension had not yet been served with process, it claims that removal was proper. Plaintiff, of course, takes the opposite view. Such a seemingly simple question turns out to have a very complicated answer and has tested the analytical abilities of more than one judge, as the following discussion well illustrates.

## II. Discussion

### A. The Landscape

Deferring, for the moment, any discussion of exactly what the 47 words found in §1441(b)(2) might mean, the history of removal strongly suggests that Congress never intended that in-state defendants be allowed to remove diversity cases to federal court. The purpose of diversity jurisdiction - which is provided for in Article III, Section 2 of the Constitution - is clearly to allow out-of-state defendants to avoid the possibility of "local prejudice" by obtaining a federal, rather than state, forum in which to defend themselves from the claims of an in-state plaintiff. The court in Browne v. Hartford Fire Ins. Co., 168 F.Supp. 796, 797 (N.D. Ill. 1959) said it well: "The underlying purpose of diversity of citizenship legislation is to provide a separate forum for out-of-State citizens against supposed local

prejudices. The purpose of removal legislation is to give a non-resident defendant who has been unwillingly brought into a State court, the right to remove to the presumably unprejudiced forum of the Federal court."

That purpose was clearly reflected in earlier versions of the removal statute.  So, for example, in former 28 U.S.C. §71, this language appears:

> Any other suit of a civil nature [which includes diversity cases], at law or in equity, of which the district courts of the United States are given jurisdiction, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that State.

See Kane v. Reichart Furniture Co., 68 F.Supp. 519, 520 (N.D. W.Va. 1946).  Such a rule prohibiting removal by in-state defendants was, in that court's words, "clear[] and unequivocal[]" as evidenced by, for example, the Supreme Court's decision in Martin v. Snyder, 148 U.S. 66, 663-643 (1893), where the court concluded that "[u]nder the act of congress of March 3, 1887, (24 St. p. 552, c. 373,) it is the defendant or defendants who are nonresidents of the state in which the action is pending who may remove the same into the circuit court of the United States for the proper district."  Martin involved the removal of a diversity case by two in-state defendants; the Supreme Court held that "[t]he defendants here were not entitled to such removal" and remanded the case for dismissal due to lack of jurisdiction.  Id. at 664.  Although Martin involved removal to a circuit court rather than to a district court, the language which the Supreme Court construed was identical in both situations.

Recognizing, however, that a clever plaintiff might attempt to restrict a non-resident defendant's right to remove through the use of questionable procedural tactics, a line of cases

-3-

developed which addressed the situation where an in-state defendant was improperly joined, or joined but never served, simply in order to defeat removal. So, for example, in Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921), the Supreme Court said that "[a] civil case, at law or in equity, presenting a controversy between citizens of different states and involving the requisite jurisdictional amount, is one which may be removed from a state court into the District Court of the United States by the defendant, if not a resident of the state in which the case is brought (section 28, Judicial Code [Comp. St. § 1010]); and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy...." This was clearly an exception to the rule which prohibited removal of diversity cases involving in-state defendants, but it was a judicial gloss on the removal statute, which did not, by its language, seem to permit that type of exception.

In 1948, the removal statute was amended and codified at 28 U.S.C. §§1441 *et seq*. That was when the "properly joined and served" language was added to §1441(b). The purpose behind the addition of that language seems fairly clear - to bring into the statute the "fraudulent joinder" doctrine and to restrict other tactics, like failing to serve a properly-joined in-state defendant, which might otherwise be used to prevent removals which Congress had authorized. If this concept had not been added to the statute and if the prior case law was changed, "[a] plaintiff could either improperly join a forum defendant, or alternatively, a plaintiff could join a forum defendant that the plaintiff had no honest intention of actually pursuing in litigation, and then not serve the forum defendant. Section 1441(b) attempts to eliminate these potential abuses by requiring that the forum defendant be 'properly joined and served.'"

Fields v. Organon USA Inc., 2007 WL 4365312, *3 (D.N.J. Dec. 21, 2007). In other words, the language was added to prevent the abuse of the removal procedure by a plaintiff who had a legitimate claim only against an out-of-state defendant, but who improperly joined or failed to serve an in-state defendant solely in order to prevent the out-of-state defendant from exercising its right of removal. There is nothing to suggest that Congress was concerned about the fact that the prior version of the statute prohibited removal by in-state defendants; had that been so, Congress could easily have eliminated, rather than retained, that prohibition.

    Against that backdrop, the Court circles back to the language chosen by Congress in 1948 (and, as some courts have pointed out, retained and slightly revised in more recent re-enactments of the removal statute, notwithstanding the controversy that has arisen in cases like this one). As Dimension, the defendant in this case, and other similarly-situated defendants, have argued, a (perhaps unintentional) consequence of Congress's choice of words was to open a "window" for an in-state defendant - even one not joined with out-of-state defendants - to remove a diversity case. That window is the time between the filing of the suit and the time that the plaintiff completes the process of properly serving the defendant. Although there is no principled reason to treat served and unserved in-state defendants any differently for removal purposes - and no basis for believing that Congress meant to expand the right of removal in 1948 or afterward, especially when the modern trend has been to restrict the right of removal - according to Dimension, that is exactly what the statute does. And, it argues, given that the "plain meaning" of the statute compels this result, this Court is powerless to reach a different conclusion.

This Court is not in the habit of including in its orders lengthy quotations from other decisions. However, the Court cannot improve upon this recital of the current history of this issue:

> District courts are in disarray on the question presented by this case.[footnote omitted] Many district courts have found that the "properly joined and served" language in section 1441(b) plainly allows a non-forum defendant to remove a case before service upon a forum defendant. Those courts disagree, however, as to whether that plain meaning must be followed or whether the result is so obviously contrary to congressional purpose that the bar to removal should nevertheless apply.
>
> Some courts have concluded that the plain meaning of section 1441(b) allows removal by a non-forum defendant prior to service on a forum defendant. See e.g., In re Diet Drugs Prods. Liab. Litig., 875 F.Supp.2d 474, 477-78 (E.D.Pa.2012); Carrs v. AVCO Corp., No. 3:11-CV-3423-L, 2012 WL 1945629, at *3 (N.D. Tex. May 30, 2012); Regal Stone Ltd. v. Longs Drug Stores California, LLC, 881 F.Supp.2d 1123, 1126 (N.D. Cal.2012); Watanabe v. Lankford, 684 F.Supp.2d 1210, 1219 (D. Haw.2010); Ripley v. Eon Labs, Inc., 622 F.Supp.2d 137, 141-42 (D.N.J. 2007). Some have allowed removal even by a forum defendant prior to service. E.g., Munchel v. Wyeth LLC, No. 12-906-LPS, 2012 WL 4050072, at *4 (D. Del. Sept. 11, 2012); Thomson v. Novartis Pharms. Corp., No. 06-6280(JBS), 2007 WL 1521138, at *4 (D.N.J. May 22, 2007).
>
> Other courts have looked past such a perceived plain meaning to decline removal by a non-forum defendant prior to service on any defendant generally, e.g., Snider v. Sterling Airways, Inc., No. 12-CV-3054, 2013 WL 159813, at *1 (E.D. Pa. Jan. 15, 2013); Perez v. Forest Labs., Inc., 902 F.Supp.2d 1238, 1246 (E.D. Mo.2012), and specifically prior to service on a forum defendant, e.g., Swindell-Filiaggi v. CSX Corp., No. 12-6962, 922 F.Supp.2d 514, 516-17, 2013 WL 489015, at *1 (E.D. Pa. Feb. 8, 2013). Many courts have refused to honor removal in the particularly egregious case of removal by a forum defendant prior to service. E.g., Mass. Mut. Life Ins. Co. v. Mozilo, 2012 U.S. Dist.

> LEXIS 91478 (C.D. Cal. June 28, 2012); <u>Ethington v. Gen. Elec. Co.</u>, 575 F.Supp.2d 855, 862 (N.D. Ohio 2008); <u>Sullivan v. Novartis Pharms. Corp.</u>, 575 F.Supp.2d 640, 647 (D.N.J.2008); <u>Holmstrom v. Harad</u>, No. 05 C 2714, 2005 WL 1950672, at *1–2 (N.D. Ill. Aug. 11, 2005). But although these courts have apparently assumed that the plain language of section 1441(b) permits removal in all of the circumstances just described, they nevertheless have arrived at different outcomes due to policy considerations or an effort to prevent "absurd" results.
>
> At least one district court, by contrast, concluded that the text and purpose of section 1441(b) are not necessarily in tension. See <u>Hawkins v. Cottrell, Inc.</u>, 785 F.Supp.2d 1361 (N.D. Ga.2011). Where other district courts had focused narrowly on the "properly joined and served" language of section 1441(b) in isolation, in <u>Hawkins</u> Judge O'Kelley read that language in context with the rest of the sentence. Section 1441(b) allows removal "only if none of the parties in interest properly joined and served as defendants" were forum defendants. Judge O'Kelley observed that the use of "none" implies that there is at least one defendant that is a party in interest that has been properly joined and served. Without this precondition for removal, the use of "none" would be superfluous. <u>Hawkins</u>, 785 F.Supp.2d at 1369.
>
> Other courts have approached the issue of pre-service removal in a manner consistent with the approach Judge O'Kelley outlined in <u>Hawkins</u>. Cf., e.g., <u>May v. Haas</u>, No. 12-01791-MCE, 2012 WL 4961235, at *2–3 (E.D. Cal. Oct. 16, 2012) (permitting removal by non-forum defendant who had been served and removed action prior to service on forum defendant, but implying that remand would have been appropriate if removal attempted prior to service on any defendant); <u>Banks v. Kmart Corp.</u>, No. 12-607, 2012 WL 707025, at *2 (E.D. Pa. Mar. 6, 2012) ("plaintiffs' litigation strategy facilitated removal to [federal court] because the plaintiffs served the non-forum defendant several weeks prior to serving the forum defendant in this case").

<u>Gentile v. Biogen Idec., Inc.</u>, 934 F.Supp.2d 313, 316-18 (D Mass. 2013). That court, by the way, aligned itself with the approach taken in <u>Hawkins</u> and concluded that the statute, read

-7-

carefully, provides that if no defendant has been served, no removal is permitted. It also delved into the intent, purpose, and history of removal, as this Court has done above, and concluded "[t]hat the legislative history of the statute is silent about the meaning of the 'properly joined and served' language suggests Congress did not put it into the statute in order to incentivize defendants to race to a federal forum." Id. at 321. Gentile has been followed or cited with approval by a number of other courts. See, e.g., In re Jean B. Mcgill Revocable Living Trust, 2017 WL 75762 (N.D. Okla. Jan. 6, 2017); Williams v. Daiichi Sankyo, Inc., 13 F.Supp.3d 426 (D.N.J. 2014); R & N Check Corp. v. Bottomline Technologies, Inc., 2013 WL 6055233 (D.N.H. Nov. 15, 2013).

   As this passage suggests, there are actually two related issues which have arisen under §1441(b)(2) which have divided the courts. Both are sometimes referred to as "snap removal" because both involve a race between the plaintiff's effort to obtain service and the defendant's effort to effect removal. One situation involves removal by an out-of-state defendant in a case where there is also an in-state defendant, but that latter defendant had not been served at the time of removal. The other involves the situation presented here (which Gentile referred to as "particularly egregious") where a lone in-state defendant files the removal notice before being served. The reading of the statute embraced by Gentile prohibits both types of "snap removal," meaning that its interpretation has consequences beyond the single in-state defendant situation. Some courts, like Breitweiser v. Chesapeake Energy Corp., 2015 WL 6322625, *6 (N.D. Texas Oct. 20, 2015), have dealt with that problem by concluding that to construe the statute to permit "snap removal" by a lone in-state defendant produces an absurd result, whereas allowing such a procedure for out-of-state defendants does not (the court

reasoned that "allowing a forum defendant to use the language of the forum-defendant rule to circumvent the forum-defendant rule yields an undeniably absurd result.... On the other hand, a nonforum defendant's use of snap removal does not yield the same untenable result").

This discussion does not, of course, resolve the issue. But it does illustrate the depth of the problem, which has even produced splits within single judicial districts. Compare United Steel Supply, LLC v. Butler, 2013 WL 3790913 (W.D. Ky. July 19, 2013)(permitting an in-state defendant to take advantage of "snap removal") with Schilmiller v. Medtronic, Inc., 44 F.Supp.3d 721, 727 (W.D. Ky. 2014)(commenting that "[t]he behavior in quickly removing before service of process can be made is clearly an attempt to go around the forum defendant rule" and remanding a case removed in that fashion). Dimension has not cited any decisions from courts in this judicial district which have addressed the issue, and the Court's research has not located any such rulings. One decision from the Northern District of Ohio, Ethington v. Gen. Elec. Co., 575 F.Supp.2d 855, 862 (N.D. Ohio 2008), cited in Gentile, supra, rejects Dimension's reading of the statute. That decision does not appear to have been cited by any decision from this district. Thus, at least within this district, the Court appears to be writing on a clean slate.

B.  Analysis

There is some tension in the rules of statutory construction which apply here. The Supreme Court has said both that when following the plain meaning of a statute "has led to absurd or futile results ... this Court has looked beyond the words to the purpose of the act," see United States v. American Trucking Ass'ns, 310 U.S. 534, 543 (1940), and that "[l]aws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous,

-9-

absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts." <u>Crooks v. Harrelson</u>, 282 U.S. 55, 60 (1930). More recently, the Supreme Court has conceded that "in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling," <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 571 (1982), and that "[w]e have reserved "some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning ... would thwart the obvious purpose of the statute.'" <u>Id</u>. quoting <u>Commissioner v. Brown</u>, 380 U.S. 563, 571 (1965) (quoting <u>Helvering v. Hammel</u>, 311 U.S. 504, 510-511 (1941)). Thus, there is some (but not much) wiggle room allowed here even if the language is as plain as Dimension makes it out to be. This Court chooses to rest its result on a slightly different approach, however.

    This Court would not go so far, as some courts have, as concluding that to read §1441(b)(2) to permit "snap removal" by a lone in-state defendant is consistent with the plain meaning of the statute but produces an absurd result. That reading certainly produces an unusual result, but a term like "absurd" is, in large measure, subjective, and statutory interpretation should not turn on whether individual judges do (or do not) consider a process or procedure to be "absurd." Nevertheless, for the following reasons, the Court concludes that §1441(b) does not allow the removal of a diversity case by a sole in-state defendant.

    The Court begins with an obvious proposition. Like all other statutory provisions, §1441(b)(2) simply cannot be read in a vacuum. Given both the purposes behind the creation of diversity jurisdiction and the history and intent of the various versions of the removal statute, an objective observer could only

conclude that it was never Congress' purpose to allow a case of this type to be removed.  At least from 1881 to 1948, the statute made that as plain as could be, and the courts uniformly interpreted the statute that way.  No problem had been identified in that time frame which suggested that in-state defendants (served or unserved) should be granted the right to remove diversity cases under any set of circumstances.

The 1948 version of §1441(b)(2) did, however, clearly intend to limit a plaintiff's ability, through artful means of pleading or joinder, to restrict unduly the statutory right of removal which had been granted to out-of-state defendants.  The use of the phrase "properly joined" in §1441(b)(2) stems directly from the judicial development of the doctrine of fraudulent joinder. Why Congress chose to add the words "and served" to "properly joined" is less clear, although it probably was designed to prevent a plaintiff from defeating removal by joining (even properly) an in-state defendant against whom the plaintiff did not intend to proceed.  Against this backdrop, the Court concludes that had Congress also intended, by inserting the phrase "properly joined and served," to open the "window" through which Dimension has tried to squeeze, it would have chosen language which far more plainly indicated its intent to do so.  A "plain" statute could have said something like this: "No in-state defendant may remove a diversity case, except that if the defendant learns about the case before service has been perfected, that defendant may remove the case by filing a notice of removal before service is complete."  Such language would leave little room for interpretation and would clearly indicate that even if courts thought that approach to removal jurisdiction to be "absurd," it was exactly what Congress wanted.  The existing statutory language, by contrast, is not that clear.

If a statute admits of any ambiguity, under cases like

-11-

Griffin, supra, the Court may look to the statute's "obvious purpose." While that concept also encompasses some level of subjectivity, a Court applying it may properly be tasked with explaining why a reasonable student of statutory purpose and history would conclude that any particular statute has an "obvious purpose" and, if so, what that is.

 Here, it is obvious to this Court, for all of the reasons stated above, that the removal statute has two primary aims. They are, first, to preserve a federal forum for certain types of cases such as federal question cases where the federal government has a strong interest in the uniform development of the law and the protection of federal constitutional and statutory rights. The same rationale applies to diversity cases in which the defendant, being out-of-state, may perceive (and actually be exposed to) a threat of local bias. Second, the removal statute is aimed at precluding the removal of all other cases, a result which is necessary to preserve the proper balance between the federal and state judiciaries. That is why, although federal courts are to give full effect to Congress's intent to provide for removal, they are also admonished, time and again, "that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction." See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999), citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

 Reading §1441(b)(2) as Dimension urges would not reflect a studious concern for state court jurisdiction. Moreover, that reading broadens removal - itself a problematic result - and it also allows the removal a class of cases which state courts are fully capable of deciding when there is no federal policy being served by that removal. Consequently, that reading is directly at odds with the two purposes behind removal jurisdiction. This

Court is extremely reluctant to attribute this result to Congress absent any indication that Congress intended to work such a profound change in the structure of the removal process.  It may be true that Congress, perhaps inartfully, chose to use language which permits a colorable argument to be made in favor of such a sea change, but the Court has principled reasons for rejecting that argument.  Consequently, this Court joins the numerous other courts which have likewise - for various reasons - refused to adopt that interpretation.  That being so, it will be recommended that, in response to Plaintiff's First Motion for Order to Show Cause (Doc. 4), this case be remanded to the Court of Common Pleas of Franklin County, Ohio.

### III.  Recommendation

For the foregoing reasons, it is recommended that this case be remanded to the Court of Common Pleas of Franklin County, Ohio.

### IV.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and

Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

                                            /s/ Terence P. Kemp
                                            United States Magistrate Judge